UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 17-cv-61617-BB

JOSE MEJIA, an individual, on behalf of
himself and all others similarly situated,

      Plaintiff,

vs.

UBER TECHNOLOGIES, INC., a
Delaware corporation,

      Defendant.

_____

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
<u>ARBITRATION AND INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ........................................................................................... 3

II.   RELEVANT FACTS .................................................................................................... 3

III.  FLORIDA HAS A VERY RIGOROUS STATUTORY FRAMEWORK ENSHRINING
THE CONSTITUTIONAL RIGHT TO BEAR ARMS ................................................. 5

   A.    There is a Constitutional Right to Bear Arms .................................................... 5

   B.    Florida's Jack Hagler Self Defense Act Codified in the Florida Statutes the Right to
   Conceal Carry a Weapon or a Firearm ...................................................................... 5

   C.    The Florida Legislature Further Clarified the Hagler Act as It Pertains to Motor
   Vehicles via Florida's Preservation and Protection of the Right to Keep and Bear Arms in
   Motor Vehicles Act of 2008 ...................................................................................... 6

IV.   UBER'S ARBITRATION CLAUSE IS UNCONSTITUTIONAL AND FAILS THE "AS-
APPLIED" CONSTITUTIONAL CHALLENGE ........................................................ 6

   A.    Compelling Arbitration in This Case Amounts to a De Facto Stripping of Plaintiff's
   Rights Under the Second Amendment ......................................................................... 6

   B.    None of the Cases That Uber Cites as Support of its Motion to Compel Arbitration
   Involve Cases of Constitutional Magnitude ................................................................. 7

V.    UBER'S ARBITRATION CLAUSE SHOULD BE STRICKEN BECAUSE IT IS
UNCONSCIONABLE ................................................................................................. 8

   A.    Uber's Arbitration Clause Should be Stricken Because It Is Both Procedurally and
   Substantively Unconscionable, and Uber's Court Filings are Misleading ................... 8

   B.    Uber's Arbitration Clause is Procedurally Unconscionable ............................... 9

      1.    Mr. Mejia Entered into His Driver Agreement with Uber via His iPhone5, the Only
      Electronic Device in his Possession with Access to the Internet ............................ 9

      2.    It is Unreasonable to Expect Individuals to be Able to Read Legal Documents on a
      Smartphone .......................................................................................................... 11

   C.    Uber's Arbitration Provision is Substantively Unconscionable ...................... 12

      1.    The Arbitration Provision Attempts to Strip Mr. Mejia of Rights That May Not be
      Infringed Upon ..................................................................................................... 12

      2.    Public Policy Dictates That Uber's Motion to Compel Arbitration Be Denied ......... 13

VI.   UBER'S GUN POLICY CANNOT CO-EXIST WITH THE SECOND AMENDMENT AND  FLORIDA'S STATUTES ............................................................................................ 14

A.   Uber's Gun Policy Prohibits Drivers, Including Plaintiff, From Exercising Their Right to Conceal-Carry a Lawful Firearm ............................................................................. 14

B.   Uber in a Buried Footnote in Its Written Legal Policies Admits that the Second Amendment, Florida's Jack Hagler Self Defense Act and the Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008 Trumps its Own Firearms Prohibition Policy ............................................................................................... 16

C.   Nowhere in Uber's Motion Does It Address the Unconstitutionality of its Gun Policy 16

VII.  THE PLAINTIFF DID NOT "SIGN AWAY" HIS CONSTITUTIONAL RIGHT TO BEAR ARMS ...................................................................................................................... 17

A.   Uber's Electronic Arbitration Agreement Does Not Include Waiver of Constitutional Rights Under the Second Amendment ....................................................................... 17

B.   To The Contrary, and Despite Defendant's Representations in its Motion, the Rasier Document Excludes Plaintiff's Claims from Mandatory Arbitration ...................................... 19

VIII. DESPITE WHAT UBER IMPLIES IN ITS MOVING PAPERS, THE LAW IS NOT SETTLED AS TO THE APPLICABILITY OF ARBITRATION PROVISIONS EVEN IN LABOR/EMPLOYMENT CASES ................................................................................... 19

IX.   CONCLUSION ................................................................................................. 20

X.    REQUEST FOR HEARING ................................................................................. 20

Plaintiff Jose Mejia ("Plaintiff" or "Mr. Mejia"), on behalf of himself and all others similarly situated, by and through undersigned counsel, hereby respectfully requests this Court to deny in part Defendant Uber Technologies, Inc.'s ("Defendant's" or "Uber's") Motion to Compel Arbitration and Stay All Court Proceedings and Accompanying Memorandum of Law in Support ("Motion") and in support thereof, states as follows:

## I.   PROCEDURAL HISTORY

Plaintiff filed this action as a putative class action against Defendant on August 11, 2017 [D.E. 1].  Defendant's counsel moved for an extension of time to respond, which was granted by this Court [D.E. 6, 7].  Defendant's timely response to the Complaint was to move to compel the parties to arbitration, and stay this action pending the arbitration of this dispute ("Motion to Compel") [D.E. 11, 13].  After conferring, the parties agreed to stay this action until the Court ruled on Defendant's Motion to Compel [D.E. 15]; on October 10, 2017, the Court set this action on a trial calendar [D.E. 19].  Plaintiff moved for an extension of time to respond to the Motion to Compel, which was granted in part by the Court, permitting Plaintiff to file his response on or before September 25, 2017 [D.E. 18].  Plaintiff hereby does so, and seeks a partial denial of Defendant's Motion (as Defendant's application for a stay is hereby mooted).

## II.   RELEVANT FACTS

The class action claims underpinning Plaintiff's complaint are not complicated.  Plaintiff is a citizen of the State of Florida and a resident of Miami-Dade County. [Compl. ¶ 3; Mejia Decl.[1] ¶ 1].  Plaintiff registered on the Uber phone application ("Uber App") on or about March 2016 as a "driver" via his iPhone 5.  Mejia Decl. ¶ 3.  Plaintiff did not at any time register as an Uber driver on a desktop or laptop computer.  *Id*.  During the time of his registration, he did not own a desktop nor a laptop computer.  Mejia Decl. ¶ 4.  Mr. Mejia today does not own a desktop or laptop computer.  Mejia Decl. ¶ 5.  His sole source of internet access through any electronics he owns is via his iPhone 5.  *Id*.

Upon registration on the Uber App and approval by Uber, he became what is colloquially known as an "Uber driver."  The Uber App matches up Uber drivers with individuals who need a ride, and via the Uber App, both driver and passenger physically meet and conduct a transaction

---

[1]     The Declaration of Plaintiff Jose Mejia, filed concurrently herewith, is hereby referenced as "Mejia Decl." throughout.

whereby the driver transports the passenger to a desired destination.  Mejia Decl. ¶ 7.  Payment is handled via the Uber App; the passenger is not required to have cash handy, nor does the driver physically process any credit cards.  Mejia Decl. ¶ 8.  Passengers' credit cards are charged for the fare by Uber, and monies, less Uber's cut,[2] is direct deposited into driver's bank accounts.  Mejia Decl. ¶ 9.

Uber drivers set their own working schedule; for example, Plaintiff can choose to work days or nights.[3]  Mejia Decl. ¶ 11.  Uber does not provide any vehicles, nor does Uber require drivers to have their cars registered in their name; drivers must maintain their own insurance.  Mejia Decl. ¶ 13.  Uber does not provide health insurance, unemployment insurance, or other such employment benefits or "perks" to their drivers.  Mejia Decl. ¶ 13.  Uber has taken the position in the past that their drivers are not "employees" but "independent contractors."  The Third District Court of Appeals for the State of Florida held in February 1, 2017 sided with Uber's position and held that Uber drivers are indeed "independent contractors" and not "employees" entitled to unemployment insurance.  *See McGillis v. Dep't of Economic Opportunity*, 3D15-2758 (3d DCA 2017); Beck Decl.[4] ¶ 4.

Uber bills itself as a "technology services provider," and is not in the business of providing "transportation services."  See "Technology Services Agreement" [D.E. 12-4].

Plaintiff filed the instant suit because Uber's Firearms Prohibition Policy violates Plaintiff's constitutional right to bear arms, and his statutory rights under Florida law.

---

[2]     Uber's "cut" prior to drivers getting their funds is currently 28% of collected fares.  When Mr. Mejia began as an Uber driver in 2016, it was 25%.  Mejia Decl. ¶ 10.

[3]     Uber does impose certain restrictions and limitations on drivers in their schedules and fare selection.  Mr. Mejia is aware that there is a minimum ride number imposed by Uber for drivers, drivers cannot get too many low ratings by passengers, and cannot reject too many offered trips while online, without facing repercussions.  Mejia Decl. ¶ 12.  These policies are not at issue in this lawsuit.

[4]     The declaration of Elizabeth Lee Beck, Esq., filed concurrently herewith, is referenced as "Beck Decl." throughout.

## MEMORANDUM OF LAW

**III.    FLORIDA HAS A VERY RIGOROUS STATUTORY FRAMEWORK ENSHRINING THE CONSTITUTIONAL RIGHT TO BEAR ARMS**

    **A.    There is a Constitutional Right to Bear Arms**

A well regulated militia being necessary to the security of a free state, the **right of the people to keep and bear arms shall not be infringed**.

Second Amendment, Bill of Rights, U.S. Constitution (emphasis added).

An in-depth policy discussion of the Second Amendment is outside the scope of this memorandum.  What is relevant, however, is that Florida is one of those states which took the interpretation and application of the Second Amendment gravely enough to explicitly codify the right into its statutes.

    **B.    Florida's Jack Hagler Self Defense Act Codified in the Florida Statutes the Right to Conceal Carry a Weapon or a Firearm**

Florida Statutes § 790.06, cited as the Jack Hagler Self Defense Act (the "Hagler Act"), regulates the licensing of individuals to carry a concealed weapon or firearm.  The Hagler Act authorizes Florida's Department of Agriculture and Consumer Services to "issue licenses to carry concealed weapons or concealed firearms to persons qualified as provided in this section." Fla. Stat. § 790.06(1).  The Hagler Act does not limit applicants to Florida residents—however, there is a laundry list of requirements that an applicant must satisfy before a license is issued. These requirements include, for example, residency status: an applicant must be a citizen or a permanent resident of the United States or a consular security official (§ 790.06(2)(a); an minimum age requirement of 21 ( § 790.06(2)(b)); and competency requirements in firearm handling ( § 790.06(2)(h)), to name just a few.  Furthermore, subsection (2)(g) of the Hagler Act states that the applicant must: "**desire[] a legal means to carry a concealed weapon or firearm for lawful self-defense.**" (emphasis added).  The Hagler Act is fairly detailed in what an applicant must show to the satisfaction of Florida's Department of Agriculture and Consumer Services to obtain a concealed carry license, and further regulates licensees once they have obtained a license regarding locations and times when concealed weapons are allowed (for example, courthouses and polling places are specifically prohibited, even if an individual has a concealed carry license).  *See* Fla. Stat. § 790.06(12).

The full text of the Hagler Act, Florida Statutes § 790.06, is attached as **Exhibit B** to Beck Decl. § 5.

**C.    The Florida Legislature Further Clarified the Hagler Act as It Pertains to Motor Vehicles via Florida's Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008**

In a nutshell, Florida Statutes § 790.251, cited as the "Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008," (hereinafter the "statute") prohibits any public or private employer from violating the **constitutional rights** of an employee[5] who is duly licensed to conceal carry a firearm under the Hagler Act from conceal-carrying their lawful firearm while in their vehicles in the employer's parking lot (Fla. Stat. § 790.251(4)(a)); nor can any such employer condition employment on whether any employee is a concealed-carry license holder (Fla. Stat. § 790.251(4)(c)(1)), nor can an employer prohibit an employee from entering the employer's parking lot while conceal-carrying a lawful firearm (Fla. Stat. § 790.251(4)(d)); nor can an employer terminate or otherwise discriminate against an employee for "exercising his or her **constitutional right** to keep and bear arms or for exercising the right of self-defense..." (Fla. Stat. § 790.251(4)(e)) (emphasis added).

The statute furthermore provides for a private right of civil action to sue in a court of law, as Plaintiff has done in this instance.  *See* Fla. Stat. § 790.251(6).  The full text of the "Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008," Florida Statutes § 790.251, is attached to Beck Decl. § 6.

**IV.    UBER'S ARBITRATION CLAUSE IS UNCONSTITUTIONAL AND FAILS THE "AS-APPLIED" CONSTITUTIONAL CHALLENGE**

**A.    Compelling Arbitration in This Case Amounts to a De Facto Stripping of Plaintiff's Rights Under the Second Amendment**

Plaintiff hereby mounts an as-applied constitutional challenge to the FAA (contrasted with a facial challenge).  Plaintiff is not saying that the FAA, on its face, is unconstitutional. Obviously, there are countless applications of the FAA that do not involve fundamental constitutional and statutory rights to the extent of this case.  See, for example, Uber's submissions of other trial court decisions [D.E. 11-2 (wage and hour), D.E. 11-3 (wage and hour), D.E. 11-4 (wage and hour).

---

[5]    "Employee" under the Statute is defined as anyone "who possesses a valid license issued pursuant to s. 790.06 [the Hagler Act] and: 1.  Works for salary, wages, or other remuneration; 2.  Is an independent contractor; or 3.  Is a volunteer, intern, or other similar individual for an employer."  Fla. Stat. § 790.251(2)(c).  It is Plaintiff's position that the statute PLAINLY applies in this instance to both Plaintiff, as "employee," and Uber, as "employer," as defined under the Statute.

However, by compelling arbitration in this case under the FAA, this amounts to a clear infringement upon not only Mr. Mejia's constitutional rights under the Second Amendment, but everyone similarly situated.  Arbitration is an **expensive** proposition; under the Rasier Agreement, and as confirmed by Uber's counsel via email on September 20, 2017, Mr. Mejia would be responsible to split the cost of an arbitration proceeding.  See Beck Decl. ¶ 9. According to the American Arbitration Association, arbitrators will receive "compensation at a rate of **$1,500 per day**." https://www.adr.org/sites/default/files/Consumer%20Fee%20Schedule_0.pdf (last accessed October 25, 2017).

This amounts to $750 a day that Mr. Mejia must pay to have his constitutional grievances against Uber heard in arbitration; not only that, but because class action is barred under the Rasier Agreement, EVERY OTHER PERSON who wishes the same relief as Mr. Mejia must also go to arbitration and pay the same exorbitant fees to get relief.

Mr. Mejia is a college student of limited financial means.  He cannot afford these arbitration fees.  Mejia Decl. ¶ 22.

As such, applying the FAA in this case and compelling arbitration is unconstitutional as doing so infringes upon Plaintiff's constitutional right to legally bear arms.

### B. None of the Cases That Uber Cites as Support of its Motion to Compel Arbitration Involve Cases of Constitutional Magnitude

In its Motion, Uber cites to the obligatory case law that purports to support its position that this Court should compel arbitration.  None, NONE, of those cases deal with an analysis of a litigant's constitutional challenge to a party's attempt at compelling arbitration, as it does here.[6]

None of the trial court wage-and-hour case opinions that Uber has offered [D.E. 11-2, 11-3 and 11-4] are availing with respect to Mr. Mejia's as-applied challenge.  The FAA, as applied to Mr. Mejia's case, violates his constitutional right to bear arms.  It is a simple argument.  See *Berry v. Schmitt*, 688 F.3d 290 (7th Cir. 2012) (bar reprimand violates attorney's First Amendment constitutional right to free speech and fails as-applied challenge); "Making Sense of

---

[6]     *Rent -A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) involved a §1983 case based on race discrimination, but the issue presented before the court was not any issue of constitutionality, but whether the court or the arbitrator may determine unconscionability, as a threshold matter.  It is inapplicable here. None of the other cases cited by Defendant come any closer to addressing the constitutionality issues, as presented here.

Facial and As-Applied Challenges," Alex Kreit, William & Mary Bill of Rights Journal, Vol. 18, Issue 3, Article 4 (an "as-applied" challenge is one where "the plaintiff argues that a statute, even though generally constitutional, operates unconstitutionally as to him or her because of the plaintiff's particular circumstances.") (citations omitted).

Courts' analyses of "as-applied" constitutional challenges, and even those based on Second Amendment grounds, is well-travelled territory, but none have been undertaken as to the particular facts of this case.[7]  Undersigned counsel is not aware of any "copy cat" class actions lawsuits either.  Mr. Mejia's case is one of first (and so far, only) impression in Florida.

## V.     UBER'S ARBITRATION CLAUSE SHOULD BE STRICKEN BECAUSE IT IS UNCONSCIONABLE

### A.     Uber's Arbitration Clause Should be Stricken Because It Is Both Procedurally and Substantively Unconscionable, and Uber's Court Filings are Misleading

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002).  Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

Under Florida law, a contract is unconscionable when one party overreaches to gain "an unjust and undeserved advantage which would be inequitable to permit him to enforce." *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982) (quoting *Peacock Hotel, Inc. v. Shipman*, 103 Fla. 633, 138 So. 44, 46 (1931)).  In order for a party to show that an arbitration provision is unenforceable, he "must establish that the arbitration agreement is both procedurally and substantively unconscionable." *Basulto v. Hialeah Automotive*, 141 So.3d 1145, 1158 (Fla. 2014).

For procedural unconscionability, "a court must look to the manner in which the contract was entered into and consider factors such as whether the complaining party had a meaningful

---

[7]     *U.S. v. Feaster*, 394 Fed.Appx. 561 (11th Circ. 2010) is one general example, as an as-applied constitutional challenge based on the Second Amendment brought by a criminal defendant convicted for possession of a firearm.  Mr. Feaster did not prevail.

choice at the time the contract was entered into." *Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006). "Courts consider 'whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract or whether the terms were merely presented on a 'take-it-or leave-it' basis; and whether he or she had a reasonable opportunity to understand the terms of the contract.'" *Id.  See also Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (1st DCA, 1999) (A court might find that a contract is procedurally unconscionable if important terms were "hidden in a maze of fine print and minimized by deceptive sales practices.") (citing "*Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)).

Substantive unconscionability focuses on the substantive terms of the agreement itself, that "the terms of the contract are unreasonable and unfair."  *Powertel* at 574 (citing *Kohl v. Bay Colony Club Condominium, Inc.*, 398 So.2d 865, 868 (Fla. 4th DCA 1981).  In *Powertel*, the court noted that Powertel's arbitration clause was substantively unconscionable because it removed plaintiff's ability to recover actual damages, and prevented the bringing of a class action, amongst other terms.  *Id.* at 576.

### B.    Uber's Arbitration Clause is Procedurally Unconscionable

#### 1.    Mr. Mejia Entered into His Driver Agreement with Uber via His iPhone5, the Only Electronic Device in his Possession with Access to the Internet

In the instant case, a contract is presented to an Uber user on a smartphone.  No pop up (such as Exhibit 2 to the Colman Decl.) appears allowing a registrant to opt out of arbitration (how easy would that be?).  Mejia Decl. ¶ 17.  Instead, the process of "opting out" requires a user to find the opt out clause of the Rasier Agreement (section viii) and follow the directions. Notably, one CANNOT opt out via the Uber App itself, but must send a properly worded email, or a letter via the U.S. Postal Service, within 30 days of entering into the Rasier Agreement.

This is no meaningful opt-out.  Furthermore, considering that one cannot opt-out during the registration process, but presumably every user is forced to agree to the arbitration clause on a "take-it-or-leave-it" basis, and can only opt out by hunting down a way to read the dense, 21-page legal contract on something other than a smartphone screen, this cannot be a reasonable opportunity to read and understand the terms of the contract.  The so-called fine print cannot be finer than taking a dense document full of legalese and expecting a layperson to read it on a 2" x 3.5" sized screen.

Uber is a smartphone app, by its own admission.  See Colman Decl. ¶ 3 (Uber...offers a **smartphone** application....Uber provides the technology through its **smartphone** application...) (emphasis added).  As such, the mechanism by which Uber enters into arbitration agreements with its users, and the opt-out procedures, should be suited for the medium in which Uber admits it operates—namely, the world of the smartphone.  By requiring a user to go hunt for a desktop computer to figure out what he signed, and then possibly discover that the deadline for opting out has passed, seems to be a textbook definition of a procedurally unconscionable contract, for the modern digital age.

Uber has offered some documents purportedly shedding light on the exact mechanics of how Mr. Mejia entered into the Rasier Agreement.  *See* Declaration of Michael Colman ("Colman Decl.") and attached exhibits, D.E. 11-1.  Mr. Colman goes on to say that his exhibits are "true and correct" copies.  Well, they are – *sort of*.

Mr. Mejia created his user account on the Uber App on his smartphone – an iPhone 5.  Mejia Decl. ¶ 3.  Although he no longer has that particular iPhone 5 in his possession, Mr. Mejia currently owns another iPhone 5.  *Id.*  The screen of an iPhone 5 is 4" diagonally[8] and the dimensions are approximately 2" x 3.5."  Mejia Decl. ¶ 19.

At the time Mr. Mejia registered as a driver on the Uber App, he did not own a laptop or desktop computer.  Mejia Decl. ¶ 4.  Today, he does not own a laptop or desktop computer.  Mejia Decl. ¶ 5.  To put this into context, Exhibit 1 to the Colman Decl. is a BLOWN UP version of what a user sees on his or her smartphone.  Mr. Mejia, for example, would see the following:

---

[8]     https://www.iphonefaq.org/archives/972165 (last accessed October 24, 2017).



(scaled to approximate size)

As to Exhibit 2 to the Colman Decl., Mr. Mejia does not recollect ever seeing that disclaimer when he registered.  Mejia Decl. ¶ 16.   It's not clear where Exhibit 2 to the Colman Decl. comes from, frankly.  Colman baldly insinuates that it is applicable to Mr. Mejia's registration, but the screenshot is NOT from Mr. Mejia's smartphone.  *Id.*  A study of Mr. Colman's declaration likewise does not state that the Exhibit 2 disclaimer was in effect WHEN Mr. Mejia signed up.  If Exhibit 2 was put into effect after Mr. Mejia signed up, then this submission is **misleading** and not applicable to the instant case, in any event.

**2.      It is Unreasonable to Expect Individuals to be Able to Read Legal Documents on a Smartphone**

Moving on to the Rasier Agreement, although Mr. Colman provides an easy to read 8.5" x 11" PDF version of the document filed into the court's record, this is NOT what a user on a smartphone sees.  Mr. Mejia, for example, would see this, once he navigated through the Uber App to the actual document itself:



(scaled to approximate size on Mr. Mejia's iPhone 5)

Mejia Decl. ¶¶ 19, 21.

In order to get a reasonably readable copy of the Rasier Agreement, this is what Mr. Mejia did after the pendency of this lawsuit: (1) he contacted Uber requesting his contracts with Defendant; (2) he received an email from an Uber agent directing him to a hyperlink; (3) he went to his mother's home in Miami-Dade to borrow her desktop computer and click on the link; and (4) downloaded the documents.  Mejia Decl. ¶ 20, 21.

### C.    Uber's Arbitration Provision is Substantively Unconscionable

#### 1.    The Arbitration Provision Attempts to Strip Mr. Mejia of Rights That May Not be Infringed Upon

For one, it requires Mr. Mejia to "give up other legal remedies."  *See Powertel* at 576 ("One indicator of substantive unconscionability is that the agreement requires the customers to give up other legal remedies. *See* Richard A. Lord, Williston on Contracts, § 18.13 (1998); Steven J. Ware, Arbitration and Unconscionability after *Doctor's Associates, Inc. v. Casarotto*, 31 Wake Forest L.Rev. 1001 (1996)...[including] important statutory remedies.").

Uber's Arbitration Provision attempts to compel Mr. Mejia to arbitrate his claim that Uber is infringing his rights under the Second Amendment, and Fla. Stat. § 790.06 & § 790.251. Forcing Mr. Mejia to arbitrate his claims, on an individual basis only, infringes the right to bear arms of every Uber driver in Florida.  Without a way to challenge Uber's gun policy, which is unconstitutional and violates Florida statutory law, everyone who drives Uber in Florida has their

constitutional rights infringed, because the gun policy will remain in place without legal recourse. There is NO feasible way for every Florida Uber driver to vindicate their Second Amendment rights if class action treatment of Mr. Mejia's claim is not allowable. The Second Amendment states that the right to bear arms "**shall not be infringed**." Fla. Stat. § 790.06(12)(b) states "A person licensed under this section shall not be prohibited from carrying or storing a firearm in a vehicle for lawful purposes."   Fla. Stat. § 790.251(6) states "However, nothing in this act shall prohibit the right of a person aggrieved under this act to bring a civil action for violation of rights protected under the act."

Arbitration proceedings are NOT civil actions, which are actions brought in court. *See Miele v. Prudential-Bache Securities*, Inc., 656 So.2d 470 (Fla. 1995) for an enlightening discussion on whether "civil action" encompasses arbitration proceedings (the Florida Supreme Court, relying on Black's Law Dictionary, concluded that it did NOT, noting that arbitration is an "alternative to the court system").

### 2.     Public Policy Dictates That Uber's Motion to Compel Arbitration Be Denied

Public policy dictates that Uber's motion to compel arbitration in this case cannot stand. The Hagler Act states the Legislature's policy in passing it as follows:

> (15)    The Legislature finds as a matter of **public policy** and fact that it is necessary to provide statewide uniform standards for issuing licenses to carry concealed weapons and firearms for self-defense and finds it necessary to occupy the field of regulation of the bearing of concealed weapons or firearms for self-defense to ensure that no honest, law-abiding person who qualifies under the provisions of this section is subjectively or arbitrarily denied his or her rights. The Department of Agriculture and Consumer Services shall implement and administer the provisions of this section. The Legislature does not delegate to the Department of Agriculture and Consumer Services the authority to regulate or restrict the issuing of licenses provided for in this section, beyond those provisions contained in this section. Subjective or arbitrary actions or rules which encumber the issuing process by placing burdens on the applicant beyond those sworn statements and specified documents detailed in this section or which create restrictions beyond those specified in this section are in conflict with the intent of this section and are prohibited. **This section shall be liberally construed to carry out the constitutional right to bear arms for self-defense.** This section is supplemental and additional to existing rights to bear arms, and nothing in this section shall impair or diminish such rights.

Fla. Stat. § 790.06(15) (emphasis added).

The Legislative intent in enacting the Statute is equally clear, and is stated directly within the Statute itself:

LEGISLATIVE INTENT; FINDINGS.—This act is intended to codify the long-standing legislative **policy** of the state that individual citizens have a constitutional right to keep and bear arms, that they have a constitutional right to possess and keep legally owned firearms within their motor vehicles for self-defense and other lawful purposes, and that these rights are not abrogated by virtue of a citizen becoming a customer, employee, or invitee of a business entity. **It is the finding of the Legislature that a citizen's lawful possession, transportation, and secure keeping of firearms and ammunition within his or her motor vehicle is essential to the exercise of the fundamental constitutional right to keep and bear arms and the constitutional right of self-defense. The Legislature finds that protecting and preserving these rights is essential to the exercise of freedom and individual responsibility.** The Legislature further finds that **no citizen can or should be required to waive or abrogate his or her right** to possess and securely keep firearms and ammunition locked within his or her motor vehicle by virtue of becoming a customer, employee, or invitee of any employer or business establishment within the state, unless specifically required by state or federal law.

Fla. Stat. § 790.251(3) (emphasis added).

Granting Uber's motion to compel arbitration would fly in the face of the very specific public policy considerations stated in the Florida statutes, and renders Uber's Arbitration Provision substantively unconscionable.

## VI.    UBER'S GUN POLICY CANNOT CO-EXIST WITH THE SECOND AMENDMENT AND  FLORIDA'S STATUTES

### A.    Uber's Gun Policy Prohibits Drivers, Including Plaintiff, From Exercising Their Right to Conceal-Carry a Lawful Firearm

Uber, in its moving papers, does not enlighten the Court on the exact policy that is in dispute here between the parties.  Plaintiff will do so now.

Uber makes available various company "Policies" on its website, including a so-called "Firearms Prohibition Policy."  *See* https://www.uber.com/legal/policies/firearms-prohibition-policy/en/ (last accessed October 25, 2017); Beck Decl. ¶ 7  for a current reincarnation of this policy.[9]  According to a DailyCaller article, Uber "quietly" implemented this prohibition on or

---

[9]    Uber's Firearms Prohibition Policy seems to have gone through several wordings over time.  For example, according to a Gawker article published on February 24, 2016, Uber worded their Firearms Prohibition Policy back then as:

about June 19, 2015 (see http://dailycaller.com/2015/06/19/uber-quietly-changes-its-gun-policy/ (last accessed October 22, 2017) ("Uber Quietly Changes its Gun Policy").[10]

Uber's Firearms Prohibition Policy is purportedly nationwide in scope, and does not exclude individuals such as Mr. Mejia, a resident of Florida who is licensed by the state to conceal-carry.  Nothing is its website indicates that Uber makes exceptions to individuals with conceal-carry licenses issued by the state of Florida.  Beck Decl. ¶ 8.

Uber's current Firearms Prohibition Policy is terse, and is as follows:

---

Legal

## Uber Firearms Prohibition Policy

Our goal is to ensure that everyone has a safe and reliable ride. That's why Uber prohibits riders and drivers from carrying firearms of any kind in a vehicle while using our app.*

Anyone who violates this policy may lose access to Uber.

---

https://www.uber.com/legal/policies/firearms-prohibition-policy/en/ (last accessed October 22, 2017).

It is difficult to conceive how such a clear ringing prohibition against Uber drivers from carrying "firearms of any kind" in their cars while using the Uber App on their own phones can co-exist with the Second Amendment, and Florida Statutes § 790.06, § 790.251, discussed *supra*.

---

We seek to ensure that everyone using the Uber digital platform—both driver-partners and riders—feels safe and comfortable using the service. During a ride arranged through the Uber platform, Uber and its affiliates therefore prohibit possessing firearms of any kind in a vehicle. Any rider or driver found to have violated this prohibition may lose access to the Uber platform.

http://gawker.com/ubers-gun-policy-only-has-one-problem-1761121785 (last accessed October 22, 2017).  However, the gist is the same—Uber prohibits both drivers and passengers from conceal-carry, overriding local and state laws that state otherwise, not to mention the Second Amendment.

[10]    **Why** Uber implemented its Firearms Prohibition Policy in 2015, and what pressures motivated Uber to do so, whether political or otherwise, is outside the scope and knowledge of this memorandum and the Plaintiff at this time.  Presumably, should the Court refuse to compel arbitration and permit this case to proceed, such questions, if not answered satisfactorily, will certainly be asked during the discovery process.

**B.      Uber in a Buried Footnote in Its Written Legal Policies Admits that the Second Amendment, Florida's Jack Hagler Self Defense Act and the Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008 Trumps its Own Firearms Prohibition Policy**

What is curious is that Uber's Firearms Prohibition Policy has an asterisk, as noted in the block quote above.  It is not immediately clear what this asterisk is referencing, as viewing the Firearms Prohibition Policy on a smartphone does not show the actual footnote.  But scrolling down multiple times shows what that asterisk is referencing:

> \* To the extent permitted by applicable law.

*See* Beck Decl. ¶ 7 for a screenshot of both the Firearms Prohibition Policy and the asterisked footnote.

The **only** way to read this footnote of Uber's own Firearms Prohibition Policy is that Uber, **by its own admission**, acknowledges the limitations that local, state and federal laws that may curtail the sweeping scope of its own Firearms Prohibition Policy.  In other words, Uber will supposedly respect any applicable laws that may conflict with its Firearms Prohibition Policy.  Although I suppose it is reassuring to have Uber state in its small print that it will respect the laws of our land,[11] is it really doing so, in substance?  Further discussion follows.

**C.      Nowhere in Uber's Motion Does It Address the Unconstitutionality of its Gun Policy**

Uber's Motion fails to address whether its Firearms Prohibition Policy, and its **very** opposition to Plaintiff's complaint, are on their faces unconstitutional acts.  Rather, Uber focuses on the nuts and bolts of how an individual with a smartphone registers as a driver and the mechanics of how Uber delivers its fine print to compel arbitration to said individuals.

Now, we are at a time and place in our jurisprudence where the law allows Americans to very easily relinquish their legal rights.  For example, in *AT&T Mobility LLC v. Concepcion et al.*, the United States Supreme Court ruled that it was legal for contracts of adhesion to bar class

---

[11]      One may safely presume that "applicable law" includes the Second Amendment, Florida's Jack Hagler Self Defense Act and the Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008, all laws, and all applicable here.

actions through arbitration clauses.[12]  However, it is **very important** to note that Mr. Mejia **did not**, electronically or otherwise, specifically sign away his rights under the Second Amendment of the Bill of Rights of the United States Constitution, or Florida Statutes § 790.06 and § 790.251. *See* Mejia Decl. ¶ 14.

So, does a general electronic acceptance to arbitrate all disputes trump a person's constitutional rights, regardless of whether such alleged waiver is specifically mentioned in the contract?  Which controls, the FAA, or the U.S. Constitution?  Discussion follows.

## VII.   THE PLAINTIFF DID NOT "SIGN AWAY" HIS CONSTITUTIONAL RIGHT TO BEAR ARMS

### A.      Uber's Electronic Arbitration Agreement Does Not Include Waiver of Constitutional Rights Under the Second Amendment

Uber submits the December 11, 2015 Technology Services Agreement between Rasier-DC, LLC and Uber drivers in Florida ("Rasier Agreement") as the controlling arbitration agreement in this case.  The Rasier Agreement is already part of the record, and filed by Uber as D.E. 11-1 (docket pages 15 through 35 of 37).

A simple text search of the Rasier Agreement document brings up **<u>no mention</u>** of any of the following terms:

- Second Amendment;

---

[12]      This can be construed as a "signing away" of a person's right to a trial by jury, a constitutional right under the Seventh Amendment of the Bill of Rights, which states as follows:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

In *Concepcion*, the Supreme Court struck down a California ruling that specifically prohibited class action waivers in arbitration provisions.  The Court held that the savings clause at issue in the FAA could not be construed to allow state law rules which frustrate the purpose of the FAA.

Of course, no such clause exists in this instant case.  As discussed supra, Uber is not purporting to *specifically* rip away Mr. Mejia's constitutional right to bear arms, and admits that it will acquiesce to all applicable laws.  *Concepcion* does not help Uber in this instance.  See also http://www.politico.com/story/2011/06/signing-away-constitutional-rights-057771 for an interesting op-ed discussion on the general erosion of people's access to the court system. Plaintiff respectfully submits that Uber's attempts at arbitration fall under this rubric, as his right to access THIS court system is being attacked by Uber.  Uber is **wrong** and **overreaching**.

- Florida's Jack Hagler Self Defense Act;
- Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008;
- gun rights or guns;
- Florida Statutes 790.06; or
- Florida Statutes 790.251.

It goes without saying that the Rasier Agreement further nowhere mentions Plaintiff's *waiver* of any of his rights under the foregoing provisions. What the Rasier Agreement does mention, however, is an "Arbitration Provision" [section 15.3 of the Rasier Agreement, pp. 29 et seq. of D.E. 11-1]. A few notable provisions of Uber's Arbitration Provision are as follows:

1) requires Plaintiff to resolve his claims on an "individual basis" and precludes him from bringing "any class, collective, or representative action," *Id*.;

2) bars Plaintiff from relief from any pending class actions, *Id*.;

3) Cites what law gives it authority in stating the "Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the 'FAA')" [section 15.3(i) of Rasier Agreement];

4) Lists the claims that fall under the Arbitration Provision via the following:

> This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for individual claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims. This Agreement is intended to require arbitration of every claim or dispute **that lawfully can be arbitrated**, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision.

> *Id*. (emphasis added).

As the Rasier Document speaks for itself, the Arbitration Provision does NOT explicitly encompass the claims brought my Plaintiff in this instant action in accordance with the plain reading of the document.

### B. To The Contrary, and Despite Defendant's Representations in its Motion, the Rasier Document Excludes Plaintiff's Claims from Mandatory Arbitration

The Arbitration Provision of the Rasier Agreement contains the following clauses:

> This Agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision.

section 15.3(i)

> The disputes and claims set forth below shall not be subject to arbitration and the requirement to arbitrate set forth in this Arbitration Provision shall not apply: .... Disputes that may not be subject to a predispute arbitration agreement **pursuant to applicable Federal law** or Executive Order are excluded from the coverage of this Arbitration Provision;

section 15.3(ii) ("Limitations on How This Agreement Applies").  As the following discussion shows, under applicable federal law, this case is NOT subject to mandatory arbitration. Furthermore, the very agreement Uber relies upon does not challenge this very conclusion, and therefore, there are no grounds for this Court to send to arbitration, under the very terms of Uber's own Arbitration Provision.

## VIII.  DESPITE WHAT UBER IMPLIES IN ITS MOVING PAPERS, THE LAW IS NOT SETTLED AS TO THE APPLICABILITY OF ARBITRATION PROVISIONS EVEN IN LABOR/EMPLOYMENT CASES

There is a trio of cases currently pending in the Supreme Court, on whether employers can legally include class action waiver provisions in employee arbitration agreements.[13]  The Ninth Circuit Court of Appeals last month stayed several class actions alleging Uber has misclassified its drivers as independent contractors, pending the Supreme Court ruling.  *See* https://www.reuters.com/article/employment-uber/9th-circuit-stays-uber-appeals-until-scotus-rules-on-waivers-idUSL2N1M72H2 (last accessed October 25, 2017) (Ninth Circuit Court of Appeals panel says "it will wait until the U.S. Supreme Court decides whether class action

---

[13]     The cases are *Morris v. Ernst & Young, LLP*; *Murphy Oil v. National Labor Relations Board*; and *Lewis v. Epic Systems Corporation*.

waivers in workers' arbitration agreements violate federal labor law before it rules on the validity of pacts signed by Uber Technologies Inc drivers.")

So even the non-constitutional cases Uber has submitted to this Court, and not applicable here, may not remain good law, or become overturned.

## IX.    CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Jose Mejia respectfully requests this Court to deny Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration, and allow this case to proceed to discovery and trial.

## X.    REQUEST FOR HEARING

Plaintiff hereby requests oral argument on Defendant's Motion to Compel Arbitration. The issues presented involve constitutional rights, potentially have wide-ranging consequences for many people beyond Plaintiff, and the conflict between Uber and the Second Amendment/Florida statutes as is the case here, is one of first impression for the courts.


DATED: October 25, 2017                         RESPECTFULLY SUBMITTED,

                                                /s/ Elizabeth Lee Beck
                                                By: Elizabeth Lee Beck

                                                **BECK & LEE TRIAL LAWYERS**
                                                JARED H. BECK
                                                Florida Bar No. 20695
                                                ELIZABETH LEE BECK
                                                Florida Bar No. 20697
                                                BEVERLY VIRUES
                                                Florida Bar No. 123713
                                                Corporate Park at Kendall
                                                12485 SW 137th Ave., Suite 205
                                                Miami, Florida 33186
                                                Telephone:    (305) 234-2060
                                                Facsimile:     (786) 664-3334
                                                jared@beckandlee.com
                                                elizabeth@beckandlee.com
                                                beverly@beckandlee.com

                                                [additional counsel on following page]

**ANTONINO G. HERNANDEZ, P.A.**
ANTONINO G. HERNANDEZ
Florida Bar No. 164828
4 SE 1st St., 2nd Floor
Miami, Florida 33131
Telephone:     (305) 282-3698
Facsimile:      (786) 513-7748
hern8491@bellsouth.net

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing instrument was e-filed with the Clerk of the Court using CM/ECF, this 25th of October 2017.

By: ___/s/ Elizabeth Lee Beck_____
Elizabeth Lee Beck