# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 17-cv-61617-BLOOM/Valle

JOSE MEJIA, an individual, on behalf
of himself and all others similarly
situated,

      Plaintiffs,

v.

UBER TECHNOLOGIES, INC., a
Delaware Corporation,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon the Defendant's Motion to Compel Arbitration

and Stay All Court Proceedings and Accompanying Memorandum of Law in Support, ECF No.

[11] ("Motion"), filed by Defendant Uber Technologies Inc. ("Defendant" or "Uber") on

September 20, 2017. Plaintiff Jose Mejia ("Plaintiff" or "Mejia") filed an Opposition to

Defendant's Motion to Compel Arbitration and Incorporated Memorandum of Law, ECF No.

[20] ("Opposition"), and Defendant replied, ECF No. [30]. The Court has carefully reviewed the

Motion, all supporting and opposing materials, the record, and is otherwise fully advised. For

the reasons that follow, Plaintiff's Complaint is dismissed without prejudice for lack of standing.

## I.      Factual and Procedural Background

Plaintiff filed his Complaint, ECF No. [1] ("Complaint") on August 11, 2017, alleging a

single cause of action styled as "Violation of Section 790.251, Florida Statutes" and seeking

declaratory relief and damages on behalf of himself and a putative class. According to the

Complaint, since June 2015, Uber has maintained a policy that "prohibit[s] drivers and riders

from carrying guns." ECF No. [1] ¶ 7.[1] Mejia, who is licensed in the State of Florida to carry a concealed weapon or firearm, alleges that he began work as an "Uber driver, offering transportation services primarily in the Miami-Dade, Broward, and Palm Beach Counties" in March 2016. *Id.* ¶¶ 6, 8. Plaintiff "wishes to carry a firearm in his vehicle while he provides transportation services through Uber." *Id.* ¶ 8. Based on these allegations, Mejia claims that Uber has violated his rights and the rights of a putative class of Uber drivers who offer transportation services in Florida and possess a license to carry a concealed weapon or firearm. *Id.* ¶¶ 11, 23.

In response to the Complaint, Defendant moves to compel arbitration. Specifically, Defendant argues that before Plaintiff began providing transportation services as an Uber driver, he entered into a Technology Services Agreement with Raiser-DC, LLC, Uber's wholly owned subsidiary (the "Raiser Agreement"). ECF No. [11] at 2. The Raiser Agreement contains an arbitration provision and a class action waiver. *See* ECF No. [11-1]. Uber notes that the Raiser Agreement allows any Uber driver to opt out of the arbitration provision by sending notice to

---

[1] While Plaintiff does not provide a copy of the policy in his Complaint, Plaintiff quotes a the current policy in his Opposition to Defendant's Motion to Compel Arbitration, which states in full:

> Uber Firearms Prohibition Policy
>
> Our goal is to ensure that everyone has a safe and reliable ride. That's why Uber prohibits riders and drivers from carrying firearms of any kind in a vehicle while using our app.* Anyone who violates this policy may lose access to Uber.
>
> *To the extent permitted by applicable law.

ECF No. [20] at 16–17 ("Policy"). While the Policy is outside the four corners of the Complaint, it may still be considered by the Court because it is central to Plaintiff's claims and its authenticity is not in dispute. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

Uber via mail or email, and Plaintiff never opted out. *Id* at 8–9. Uber thus argues that these provisions are binding on Mejia, and any claims he may have must be arbitrated individually pursuant to the Raiser Agreement. *Id.*

In Opposition, Plaintiff argues that because of Florida's "rigorous statutory framework enshrining the constitutional right to bear arms," the arbitration clause is unconstitutional as applied. ECF No. [20] at 6–7. Plaintiff further argues that the arbitration provision is procedurally unconscionable because there is no meaningful way to opt out of the arbitration provision since the process must be completed by mail or email and cannot be completed through Uber's smartphone application. *Id.* at 11. Plaintiff also argues that the Raiser Agreement is procedurally unconscionable because "it is unreasonable to expect individuals to be able to read legal documents on a smartphone." *Id.* at 12. Finally, Plaintiff argues that the arbitration provision is substantively unconscionable because it attempts to strip Plaintiff of rights that "may not be infringed upon," namely Plaintiff's alleged right under Florida law to keep a concealed weapon in his vehicle while driving for Uber. *Id.* at 8–12.

## II. Standing

Although the parties have not raised the issue of standing, the Court properly considers this threshold jurisdictional question prior to adjudication of the Motion before the Court. *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 877–78 (11th Cir. 2000) (holding that, where not briefed by the parties, "the district court correctly reached out and considered the question of standing *sua sponte*"). "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301–02 (11th Cir. 2008) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)). Critical to the case-or-controversy requirement of Article III is an inquiry into standing (*id.* (citing *Lujan v. Defenders*

*of Wildlife,* 504 U.S. 555, 560 (1992))), which "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005). "That a plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, does not relieve him of the burden of satisfying the prerequisites for standing, since a declaratory judgment may only be issued in the case of an actual controversy." *Id.* (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (quotation marks omitted).

The party invoking federal jurisdiction bears the burden of proving the essential elements of standing. *Lujan*, 504 U.S. at 561; *Elend v. Basham*, 471 F.3d 1199, 1205–06 (11th Cir. 2006). Given the procedural posture in this case, the Court looks to the sufficiency of the allegations in the Complaint and any attached documents to the Motion central to Plaintiff's claims to determine standing. *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). However, "[i]t is not enough that 'the [plaintiff]'s complaint sets forth facts from which [the Court] could imagine an injury sufficient to satisfy Article III's standing requirements.' " *Elend*, 471 F.3d at 1206 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000) (citations omitted)). Rather, a plaintiff must satisfy three constitutional prerequisites of standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*DiMaio*, 520 F.3d at 1301–02 (11th Cir. 2008) (citing *Lujan*, 504 U.S. at 560–61); *see also Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility."); *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003) ("To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.").

In the Complaint, Plaintiff alleges that he possesses a license to carry a concealed weapon from the State of Florida and that he "wishes to carry a firearm in his vehicle while he provides transportation services through Uber." ECF No. [1] at 8. Plaintiff further pleads that "[t]hrough its no-firearm policy, Uber has violated the rights of Plaintiff, and other members of the Class, as those rights are described under subsections 790.251(4)(c)-(d), Florida Statutes." *Id.* ¶ 23. However, these allegations, without more, do not sufficiently plead an injury in fact, that is, the invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent" as required by the *Lujan* test. First, Plaintiff only alleges that he "wishes" to carry his firearm while driving for Uber, but does not allege that he tried to do so or that Uber has attempted to enforce the Policy against him. *See DiMaio*, 520 F.3d at 1302–03 ("DiMaio's right to vote, protected by the Fourteenth Amendment, cannot be impaired by the DNC's failure to consider a ballot that he did not cast in the first place."). Second, the Policy states that Defendant "prohibits riders and drivers from carrying firearms of any kind in a vehicle while using [Uber's] app . . . to the extent permitted by applicable law." *See* ECF No. [20] at 15–16. The crux of Plaintiff's claim is that the Policy conflicts with Florida Statute 790.251(4)(c)-(d), even though the plain language of the Policy carves out the conflict Plaintiff complains of and

Uber has not otherwise attempted to enforce the Policy against Mejia. Instead Plaintiff requests this Court to extrapolate how, if at all, Uber might enforce the Policy against Plaintiff and the putative class. Plaintiff speculates that Uber may prohibit him from keeping his firearm in his vehicle while using the Uber application, allegedly in contravention of Florida law, but this hypothesis does not "support a finding of the 'actual or imminent' injury that our cases require" and defies the plain language of the policy. *Elend*, 471 F.3d at 1209 (quotation marks and citations omitted). Accordingly, Plaintiff cannot satisfy the first prong of the *Lujan* test. Rather, the relief that Plaintiff seeks, "that the Court declare that Defendant's conduct violates the statute referenced herein," ECF No. [1] at 6, is an impermissible "exercise in purely advisory decision-making." *DiMaio*, 520 F.3d at 1303. Because Plaintiff lacks standing, the Court refrains from further consideration of the Motion and this action must be dismissed for lack of jurisdiction.

## III.      CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED** without prejudice for lack of jurisdiction.

2. Any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED.**

3. The Clerk of the Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15th day of February, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record